UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------
UNITED STATES OF AMERICA,

    -  against  -

ISKYO ARONOV, MICHAEL
KONSTANTINOVSKIY,
TOMER DAFNA,
AVRAHAM TARSHISH, and
MICHAEL HERSKOWITZ,

                          Defendants.
---------------------------------------------------------------

**MEMORANDUM & ORDER**
19-CR-408 (MKB)

MARGO K. BRODIE, United States District Judge:

On April 29, 2019, a grand jury returned an indictment against Defendants Iskyo Aronov, Michael Konstantinovskiy, Tomer Dafna, Avraham Tarshish, and Michael Herskowitz, charging them with conspiracy to commit wire and bank fraud in violation of 18 U.S.C. §§ 1349 and 3551 *et seq*. ("Counts One and Two"), and substantive counts of wire fraud related to specific transactions in violation of 18 U.S.C. §§ 1343, 2, and 3551 *et seq*. ("Counts Three through Seven").[1] (Indictment ("Ind.") ¶¶ 36–42, Docket Entry No. 1; Grand Jury Investigation Covering Mem., annexed to Ind. as Ex. 3, Docket Entry No. 1-3.) The Indictment alleges that Herskowitz engaged in conspiracies to defraud lenders and certain borrowers (collectively, the "Short Sale Victims") "by providing them with false, misleading, and incomplete information to induce them to execute short sales at fraudulently depressed prices, causing losses to the lenders and, at times, the borrowers" (the "Short Sale Schemes"). (Ind. ¶ 18.)

---

[1] The Indictment was unsealed by order dated September 12, 2019. (Order dated Sept. 12, 2019, Docket Entry No. 8.)

On April 30, 2021, Herskowitz moved to dismiss the Indictment pursuant to Rules 12(b)(2) and (b)(3)(B)(v) of the Federal Rules of Criminal Procedure for "fail[ing] to give [n]otice of the criminal acts allegedly committed as required by Due Process of Law." (Def.'s Mot. to Dismiss ("Def.'s Mot."), Docket Entry No. 175; *see also* Def.'s Mem. in Supp. of Def.'s Mot., , Docket Entry No. 175-1.) The Government opposes the motion. (Gov't Opp'n to Def.'s Mot. ("Gov't Opp'n"), Docket Entry No. 183.)

For the reasons set forth below, the Court denies Herskowitz's motion to dismiss the Indictment.

I. Background

a. The Indictment

According to the thirty-three-page Indictment, from in or about December of 2012 to January of 2019, Defendants, including Herskowitz, "worked both together and separately to purchase hundreds of properties at fraudulently depressed prices and then resell or 'flip' the properties for large profits." (Ind. ¶ 18.) The Short Sale Schemes "originated at [My Ideal Property ('MIP')] under the direction of [Aronov] with the assistance of [Konstantinovskiy and Tarshish], Short-Sale Co-Conspirators 1, 2 and 3, and others" (the "MIP Scheme") and the scheme was later replicated by Tarshish and Dafna "at Exclusive Homes with the assistance of Short-Sale Co-Conspirator 2 and others" (the "Exclusive Homes Scheme"). (*Id.* ¶ 19.) The Indictment identifies Herskowitz as "a real estate attorney who assisted the Short-Sale Co-Conspirators in completing certain fraudulent short sale transactions originated by both MIP and Exclusive Homes." (*Id.*) Herskowitz is charged in five counts of a seven count Indictment — Count One (the MIP Scheme), Count Two (the Exclusive Homes Scheme), (*see id.* ¶¶ 36–39), Count Four (wire fraud in furtherance of the MIP and Exclusive Homes Schemes), Count Six

2

(wire fraud in furtherance of the Exclusive Homes Scheme), and Count Seven (wire fraud in furtherance of the MIP and Exclusive Homes Schemes), (*see id.* ¶¶ 41–42) — for his involvement in specified financial transactions alleged to have been undertaken in furtherance of the MIP and Exclusive Homes Schemes.

The Indictment provides a detailed overview of the MIP and Exclusive Homes Schemes, (*see id.* ¶¶ 18–25), and alleges that "[d]uring different and sometimes overlapping periods of time, various groupings of [Defendants] worked together in the [Short Sale Schemes], (*id.* ¶ 25). The "groupings" are: (1) "[f]rom approximately December [of] 2012 through December [of] 2016, [Aronov, Konstantinovskiy and Tarshish], together with others, worked on fraudulent short sales coordinated by [Aronov] where the primary beneficiaries of the Short Sale Scheme were the owners of MIP," and (2) "[f]rom approximately January [of] 2014 through January [of] 2019, [Aronov, Tarshish, Dafna and Herskowitz], together with others, worked on fraudulent short sales where the primary beneficiaries of the Short Sale Scheme were . . . [Dafna and Tarshish]." (*Id.*)

The Indictment specifies seven "select transactions" that Defendants and the Short Sale Co-Conspirators executed as part of the Short Sale Schemes, involving properties located at: 175 Vernon Avenue, Brooklyn, New York; 1219 Jefferson Avenue, Brooklyn, New York; 1319 Jefferson Avenue, Brooklyn, New York; 1055 Herkimer Street, Brooklyn, New York; 177 Lewis Avenue, Brooklyn, New York; 2403 Dean Street, Brooklyn, New York; and 65 Glen Street, Brooklyn, New York. (*Id.* ¶¶ 27–33.)

In addition, the Indictment makes certain specific allegations regarding Herskowitz's involvement in the short sale transactions to purchase certain properties associated with both the MIP and Exclusive Homes Schemes as follows: (1) "on or about July 23, 2014, [Herskowitz]

3

wired approximately $252,755 to the [mortgage loan] servicer's bank account to satisfy the short sale payoff amount due" in connection with the short sale transaction to purchase 1219 Jefferson Avenue, (*id.* ¶¶ 28–28(a), 28(d)); and (2) Herskowitz "on behalf of [Aronov], wired approximately $238,798 to a bank account designated by the [mortgage loan] servicer and approximately $153,095 to Short Sale Co-Conspirator 2's bank account, both in connection with the short sale transaction" to purchase 2403 Dean Street, (*id.* ¶¶ 32, 32(f)).  In furtherance of the Exclusive Homes Scheme, Herskowitz "wired $239,483.88 to the [mortgage loan] servicer in connection" with the short sale transaction to purchase 177 Lewis Avenue.  (*Id.* ¶¶ 31(a), 31(e).) The Indictment also charges Herskowitz with substantive wire fraud counts for wire transfers associated with the purchase of 1219 Jefferson Avenue, 2403 Dean Street, and 177 Lewis Avenue.  (*Id.* ¶ 42.)

## II. Discussion

### a. Legal standard

Indictments must contain both "a plain, concise, and definite written statement of the essential facts constituting the offense charged" and a "citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated." Fed. R. Crim. P. 7(c)(1); *United States v. Dupree*, 870 F.3d 62, 70 (2d Cir. 2017).  An indictment is to be "read . . . 'to include facts which are necessarily implied by the specific allegations' therein." *United States v. Faison*, 393 F. App'x 754, 757 (2d Cir. 2010) (quoting *United States v. LaSpina*, 299 F.3d 165, 177 (2d Cir. 2002)).  "[C]ommon sense and reason are more important than technicalities" and the indictment "need not be perfect." *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013) (quoting *United States v. De La Pava*, 268 F.3d 157, 162 (2d Cir. 2001)); *Faison*, 393 F. App'x at 757 ("[I]t is not necessary to allege facts with technical precision, but rather, to outline the

4

essential elements [required by Rule 7(c)(1)]."). "An indictment is sufficient if it 'first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *Stringer*, 730 F.3d at 124 (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)); *see also Dupree*, 870 F.3d at 70 ("An indictment that does not set out all of the essential elements of the offense charged is defective." (quoting *United States v. Gonzalez*, 686 F.3d 122, 127 (2d Cir. 2012))).

Pursuant to Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure, a defendant may move to dismiss an indictment for various defects, including "a failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B); *United States v. Aleynikov*, 676 F.3d 71, 75–76 (2d Cir. 2012) ("[A] federal indictment can be challenged on the ground that it fails to allege a crime within the terms of the applicable statute." (citation omitted)). Courts must accept as true the allegations in an indictment for purposes of evaluating a motion to dismiss. *See United States v. Velastegui*, 199 F.3d 590, 592 n.2 (2d Cir. 1999); *United States v. Raniere*, 384 F. Supp. 3d 282, 292 n.1 (E.D.N.Y. 2019) ("[T]he court must assume that the [i]ndictment's allegations are true for the purposes of a motion to dismiss.'" (citing *United States v. Wey*, No. 15-CV-611, 2017 WL 237651, at *5 (S.D.N.Y. Jan. 18, 2017))). As a result, the Second Circuit "ha[s] consistently upheld indictments that do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Ghayth*, 709 F. App'x 718, 723 (2d Cir. 2017) (alteration in original) (quoting *United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000)).

### b. The Court denies the motion to dismiss the Indictment

In support of his motion to dismiss the Indictment, Herskowitz argues that it provides constitutionally insufficient notice of the conduct for which the Government seeks to hold him criminally liable. (Def.'s Mem. ¶ 4.) Herskowitz argues that he "is mentioned only a few times in the body of the Indictment, and even then, mostly by way of conclusory boilerplate allegations," (*id.* ¶ 6), and that to the extent the Indictment charges him with different substantive counts of wire fraud related to specific short sale transactions, "these counts . . . are inconsistent with the factual recitation of the Indictment," which "indicates that [Herskowitz] was *not* a participant in the [MIP Scheme] and that he is named only in conjunction with the alleged Exclusive Homes [S]cheme," (*id.* ¶ 11).

In its opposition, the Government argues that "the Indictment is more than sufficient to put Herskowitz on notice as to those charged crimes" and "to the extent that Herskowitz complains about the quantity of evidence set forth in the Indictment, . . . there is simply no requirement that an Indictment set forth the government's evidence, explain how it will prove the charges or allege all the specific facts that show that the defendant is guilty of the charged crimes." (Gov't Opp'n 11.)

### i. MIP Scheme

Herskowitz argues that because the factual allegations in the Indictment make clear that "he *was not* one of those [Defendants] involved in the MIP Scheme," (Def.'s Reply in Supp. of Def.'s Mot. ("Def.'s Reply") 2, Docket Entry No. 186), the "conclusory, boilerplate allegations" in the Indictment implicating him in the short sale transactions associated with the MIP Scheme "need *not* be accepted as true, and . . . may *not* sustain the charges where the detailed factual allegations are to the contrary," (Def.'s Mem. ¶ 16 (citing *United States v. Gabriel*, 920 F. Supp.

6

498, 506 (S.D.N.Y. 1996))).  In support, Herskowitz argues that although he is charged in Counts One, Four and Seven as related to the MIP Scheme, the Indictment does not allege that he "participated in the actual arrangements for either the 1219 Jefferson [Avenue] or 2403 Dean [Street] sales, which the Indictment makes clear were done exclusively by co-Defendants Tarshish, Dafna and Aronov."  (*Id.* ¶¶ 9, 14.)  Further, with respect to 1219 Jefferson Avenue, "the only mention of [him] is that he participated in the closing by wiring the loan payoff amount to the servicer's bank account," (*id.* ¶ 9 (citing Ind. ¶ 28(d))), and likewise, with respect to 2403 Dean Street, he is only "alleged to have wired the payoff amount and sale proceeds to two bank accounts on the date of closing," (*id.* (citing ¶ 32(f))).

The Government contends generally that Herskowitz's claim that "the Indictment is 'silent' as to his role in the charged short sale fraud Counts . . . is both untrue and irrelevant."  (Gov't Opp'n 10.)  In support, the Government argues that the Indictment contains language alleging Herskowitz "assisted the Short-Sale Co-Conspirators in completing certain fraudulent short sale transactions originated by both MIP and Exclusive Homes," (*id.* at 11 (citing Ind. ¶ 19)), and that although "the [G]overnment will present evidence explaining how [Herskowitz's] conduct is part of the charged crimes [at trial]," the Indictment is not required to provide the Government's evidence or specify the facts the Government plans to use to establish his guilt, (*id.*).

Title 18, United States Code, Section 1343 imposes criminal liability on any party who "having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire . . . in interstate or foreign commerce, any writings . . . for the purpose of executing such scheme or artifice."  18 U.S.C. § 1343 (2008); *see also*

7

*Fountain v. United States*, 357 F.3d 250, 252 (2d Cir. 2004) (defining wire fraud). Section 1344 imposes criminal liability on any party who "knowingly executes . . . a scheme or artifice: (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses[ or] representations . . . ." 18 U.S.C. § 1344 (1990); *see also United States v. Calderon*, 944 F.3d 72, 91 (2d Cir. 2019) (defining bank fraud).

The Court denies the motion to dismiss because the Indictment tracks the statutory language of the charged crimes and provides sufficient notice of Herskowitz's alleged criminal conduct. It alleges that Herskowitz: (1) "knowingly and intentionally conspire[d]" to "defraud . . . the Short Sale Victims, which included financial institutions, and to obtain money and property from them by means of one or more materially false and fraudulent pretenses, representations and promises," and in executing the scheme, "cause[d] to be transmitted by means of wire communication in interstate and foreign commerce writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Section 1343"; and (2) conspired "to defraud one or more financial institutions, and to obtain moneys, funds, credits and other property owned by . . . such financial institutions, by means of one or more materially false and fraudulent pretenses . . . contrary to Title 18, United States Code, Section 1344." (Ind. ¶ 37.) The Indictment further alleges that Herskowitz "assisted the Short-Sale Co-Conspirators in completing certain fraudulent short sale transactions originated by both MIP and Exclusive Homes," (*id.* ¶ 19), and specifically alleges that Herskowitz was involved in the purchase of 1219 Jefferson Avenue and 2403 Dean Street, (*id.* ¶ 28(c)).

To the extent Herskowitz seeks to challenge the truth of the allegations in the Indictment or the sufficiency of the Government's evidence, this presents a factual question that cannot be

8

decided on a motion to dismiss. *See Raniere*, 384 F. Supp. 3d at 300 ("[A]rguments . . . which concern the sufficiency and/or truth of the allegations in the [c]omplaint, raise factual questions not appropriate for decision on a pretrial motion to dismiss." (citing *United States v. Messina*, No. 11-CR-31, 2012 WL 463973, at *4 (E.D.N.Y. Feb. 13, 2012))); *United States v. Sampson*, 898 F.3d 270, 282 (2d Cir. 2018) ("[A] court cannot test the sufficiency of the government's evidence on a Rule 12(b) motion."). The Government is not required in the Indictment to present the evidence through which it will prove Herskowitz knowingly conspired to facilitate the MIP Scheme when he assisted in the relevant short sale transactions. *See United States v. Smith*, 105 F. Supp. 3d 255, 262 (W.D.N.Y. 2015) ("At trial, the [g]overnment must prove that [the] [d]efendant knowingly and willfully became a member of the conspiracy. However, the [g]overnment is not required to include in the indictment detailed allegations regarding a defendant's knowledge of a conspiracy." (first citing *United States v. Williams*, 453 F. App'x 74, 78 (2d Cir. 2011); then citing 1–19 Modern Federal Jury Instructions–Criminal § 19.01; then citing *Wong Tai v. United States*, 273 U.S. 77, 81 (1927); and then citing *United States v. Wydermyer*, 51 F.3d 319, 325–26 (2d Cir. 1995))); *see also United States v. Gatto*, 295 F. Supp. 3d 336, 349–50 (S.D.N.Y. 2018) (rejecting defendants' argument that "the indictment is deficient" for failing to "allege any facts to support its contention" that defendants knowingly made false representations to their respective universities regarding violations of NCAA rules, because the indictment sufficiently put defendants on notice of the criminal conduct alleged and the defendants' arguments otherwise amount to premature challenges to the sufficiency of the evidence).

Finally, the Court rejects Herskowitz's argument that Count One should be dismissed because he is not consistently identified as "one of those involved in the MIP Scheme." (Def.'s

9

Reply 1–2 (citing Ind. ¶ 25).) Not only does the Indictment provide specific factual allegations in support of Herskowitz's involvement in the MIP Scheme through his assistance with the purchase of 1219 Jefferson Avenue and 2403 Dean Street as discussed above, (*see* Ind. ¶¶ 28, 28(d), 32, 32(f)), the Indictment also states that Aronov, Konstantinovskiy, and Tarshish, "*together with others*, worked on fraudulent short sales coordinated by Aronov," to the primary benefit of MIP, (Ind. ¶ 25 (emphasis added)). Thus, the Indictment provides a non-exhaustive list of Defendants allegedly involved in the MIP Scheme, *see United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992) ("[P]recision and proper notice to the defendant cannot be sacrificed for the sake of brevity, but . . . common sense must control, and . . . '[a]n indictment must be read to include facts which are necessarily implied by the specific allegations made.'" (quoting *United States v. Silverman*, 430 F.2d 106, 111 (2d Cir. 1970), *modified*, 439 F.2d 1198 (2d Cir. 1970), *cert. denied*, 402 U.S. 953 (1971))), and there is no express contradiction between the Indictment's broader allegations regarding Herskowitz's involvement in the MIP Scheme and the factual allegations in support of this larger claim.

Accordingly, the Court finds that the Indictment is constitutionally sufficient and further finds that the inconsistency identified by Herskowitz is not sufficient to warrant dismissal of Count One, nor the related substantive counts of wire fraud charged in Counts Four and Seven. *See Stringer*, 730 F.3d at 124 ("An indictment 'need not be perfect, and common sense and reason are more important than technicalities.'" (quoting *De La Pava*, 268 F.3d at 162)).[2]

---

[2] This case is distinguishable from *United States v. Gabriel*, in which the court granted defendants' motion to dismiss one of three conspiracy counts charged in the indictment as barred by the statute of limitations. 920 F. Supp. 498, 506 (S.D.N.Y. 1996). In *Gabriel*, the court found that the government improperly attempted to "bring [defendants'] overt acts . . . within the scope of the original conspiracy by referring to them as examples of 'lulling' activity designed to help continue the fraud, rather than to obstruct its detection," notwithstanding particularized

### ii. Exclusive Homes Scheme

Herskowitz argues that Counts Two, Four, Six and Seven should be dismissed because the factual allegations do not support his involvement in the Exclusive Homes Scheme. (Def.'s Mem. ¶¶ 12, 14.) With regard to Counts Two, Four and Seven, Herskowitz contends that "the Indictment alleges only that [he] wired payoff and/or proceeds funds at the closing after all the arrangements for the sale had been made by others," but does not indicate that "he participated in *or even that he was told of* the short sale arrangements — instead, the allegations are that he simply showed up at the closing and conducted funds transfers as any closing agent would." (*Id.* ¶ 14.) Herskowitz also argues that the "allegations do not show that his participation in the closings was with any kind of guilty knowledge," and instead the "factual detail in the Indictment negates any inference of even an implicit understanding [of the conspiracy]" by making clear that he "was a closing agent and nothing more, who was used by his co-Defendants rather than being a partner in crime with them." (*Id.* ¶¶ 15, 18.) Likewise, Herskowitz argues that he is wrongly "charged in Count Six — the substantive wire fraud count relating to the 177 Lewis Avenue sale — even though the factual portion of the Indictment indicates that he was not involved in that sale." (*Id.* ¶ 12.)

The Government argues that the Indictment is sufficient to put Herskowitz on notice as to the crimes charged in conjunction with his alleged involvement in the Exclusive Homes Scheme, including that he "wired funds to [the loan servicer in order to] complete three of the fraudulent short sale examples described in the Indictment," and "that the loan servicer, in violation of the

---

allegations in the indictment which described the defendants' overt acts to prevent discovery of the full extent and nature of the fraudulent scheme. *Id.* at 506. In contrast, the Indictment alleges that Herskowitz assisted in the MIP Scheme and includes particularized allegations regarding his involvement in the short sale transaction to purchase 1219 Jefferson Avenue and 2403 Dean Street to support this broader allegation. (*See* Ind. ¶¶ 19, 28, 28(d), 32, 32(f).)

11

short sale conditions it had imposed, was not told of the actual purchase price or the amounts paid to the Short Sale Co-Conspirators." (Gov't Opp'n 11.)

As with the MIP Scheme, the Indictment tracks the language of the charged crimes and alleges that Herskowitz conspired to commit wire fraud and bank fraud in violation of Title 18 United States Code, Sections 1343 and 1344, and explicitly alleges that Herskowitz acted "knowingly and intentionally" in conspiring with Defendants in the Exclusive Homes Scheme between January of 2014 and November of 2018. (Ind. ¶ 39.) These allegations alone are sufficient to satisfy Rule 7(c). However, the Indictment also contains specific factual allegations regarding Herskowitz's involvement in the short sale transactions to purchase 1219 Jefferson Avenue and 2403 Dean Street, (*see id.* ¶¶ 28, 28(d), 32, 32(f)), in addition to 177 Lewis Avenue, (*id.* ¶¶ 31(e), 42)). To the extent Herskowitz contends that these factual recitations are insufficient to support the claim that he knowingly conspired to defraud the Short Sale Victims, he makes a premature challenge to the factual sufficiency of the Government's case. *See Wey*, 2017 WL 237651, at *5 ("An indictment does not . . . 'have to specify evidence or details of how the offense was committed.'" (quoting *United States v. Coffey*, 361 F. Supp. 2d 102, 111 (E.D.N.Y. 2005))); *Coffey*, 361 F. Supp. 2d at 111 ("[T]he validity of an indictment is tested by its allegations, not by whether the Government can prove its case." (citing *Costello v. United States*, 350 U.S. 359, 363 (1956))).

Accordingly, the Court denies Herskowitz's motion to dismiss Counts Two, Four, Six, and Seven.

### III. Conclusion

For the foregoing reasons, the Court denies Herskowitz's motion to dismiss the Indictment.

Dated: June 9, 2021
      Brooklyn, New York

                                            SO ORDERED:

                                             s/ MKB
                                            MARGO K. BRODIE
                                            United States District Judge